## Case No. 6,033.

### In re HANNAHS.

[8 Ben. 533.] [1]

District Court, S. D. New York. Nov., 1876.

COMPOSITION PROCEEDINGS AFTER REFUSAL OF DISCHARGE—JURISDICTION.

After the refusal of a discharge in bankruptcy to H. he filed a petition in composition, under which a meeting of creditors was had, at which he proposed a composition of one-half of one per cent., payable in ten days after the recording of the final order of confirmation. The resolution of composition was passed by the requisite number and amount of creditors, but was opposed by two creditors who had successfully opposed his discharge: *Held*, that, without passing on the question whether the court had jurisdiction of composition proceedings begun after the refusal of a discharge, the court was satisfied that the composition was not for the best interests of the two creditors who opposed and defeated the discharge of the bankrupt, and would, therefore, refuse to confirm the resolution.

[Distinguished in Re Odell, Case No. 10,427.]

[In the matter of John J. Hannahs, a bankrupt.]

Eugene Smith, for bankrupt.

F. H. Kellogg and J. Reynolds, for dissenting creditors.

BLATCHFORD, District Judge. The bankrupt having applied for his discharge, his discharge was opposed by two creditors, on specifications of objection filed, and, on the 29th of June, 1876, by an order made by this court, his discharge was refused. See [Case No. 6,032]. He had been adjudged a bankrupt on the 3rd of August, 1875, on the petition of his creditors. The grounds on which a discharge was refused were, that he had, in contemplation of becoming bankrupt, made certain conveyances of property to creditors for the purpose of preferring them, and that he had failed to keep proper books of account. On the 11th of July, 1876, the bankrupt presented a petition to this court, which sets forth, "that no assets have come into the hands of the assignee appointed herein;" that the bankrupt "has no assets or property of any kind or description;" that his "friends have offered to advance a sum of money to enable him to propose a composition to his creditors;" that his "creditors have almost unanimously expressed a desire" that

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

he "should obtain a discharge from his debts and have stated their willingness to accept any composition which should accomplish that result and leave" him "free to go into business anew; that nearly all of said creditors have voluntarily signed a paper agreeing to accept, by way of composition, the payment of fifty cents for every hundred dollars of the principal amount of their claims against" the bankrupt; that he "believes that said composition would be gladly accepted by every one of his thirty creditors, with the exception of two creditors only, who have violently opposed" his "discharge, and shown a hostile determination to prevent" him "from ever again engaging in any business;" that he "has no means of gaining a livelihood and no prospect of ever being able to do so, unless through the relief of composition proceedings;" and that he "therefore proposes a composition to his creditors as aforesaid of fifty cents for every hundred dollars of the debts due to them respectively from" him, "payable in cash immediately upon and after the final confirmation and approval of said composition." The petition contains other proper allegations and prays for a meeting of creditors. A list of creditors annexed to the petition shows that there are 29 creditors wholly unsecured and one creditor fully secured. Among the 29, are the two creditors who opposed the discharge. The usual proceedings took place and the meeting of creditors was held. At the meeting the bankrupt proposed the composition above named, being one-half of one per centum, the same to be paid in money within ten days after the recording of the final order of the court confirming the composition proceedings. The statement of debts presented to the meeting shows 30 debts. Four of the creditors hold security. One of the 4 is fully secured. The securities held by 2 others of the 4 are stated to be of no value whatever, and the securities held by the remaining one of the 4 are stated to be of unknown value, but of much less value than the claim. The statement of assets sets forth that "the bankrupt has no assets or property of any kind or description whatsoever, except the technical right to redeem the securities and assets which, as above set forth, are pledged to his secured creditors. This right to redeem upon payment in full of the debts of said secured creditors is of no value whatever." The composition is confirmed by the signatures of the bankrupt and of 20 of the 29 unsecured creditors. It is opposed by the two creditors who opposed the discharge in bankruptcy. The grounds of opposition are, that the proceedings in bankruptcy are closed, within the meaning of section 4972 of the Revised Statutes, so far as the matter of any discharge of the bankrupt is concerned, and that, since the refusal of a discharge to the bankrupt, there has not been any case of bankruptcy pending, within the meaning of section 17 of the

bankruptcy amendment act of June 22, 1874 [18 Stat. 182], and that, therefore, this court has no jurisdiction of this composition proceeding; that the composition is not for the best interest of all concerned; and that it can not proceed without injustice to the creditors who opposed and defeated the application for discharge.

I cannot regard this composition as for the best interest of all concerned. It is not for the best interest of the two creditors who opposed and defeated the discharge of the bankrupt, and it is unjust to them. They were at the trouble and expense of opposing the discharge. They were successful. The order refusing the discharge was acquiesced in by the bankrupt. These two creditors had a right to suppose they had prevented a discharge of the bankrupt from the debts he owed them, and now they are sought to be coerced by friendly creditors, who shared no part of the burden of opposing a discharge, into accepting, in full satisfaction of their debts, the nominal sum of one-half of one per centum on the debts. If this proposal of composition had been made before a discharge was applied for, the case would not have presented the features it now does. As was said by this court in Re Reiman [Case No 11,673]: "The rights and interests of the dissenting or non-assenting creditors are under the protection of the court, and the affirmative votes of the assenting creditors are of no avail to affect such rights and interests, if the composition be not for the best interest of the other creditors, or be unjust towards them." The object of the assenting creditors is stated by the bankrupt and himself, in his petition, to be, to enable the bankrupt to obtain a discharge from his debts; and this is quite apparent from the nominal amount of the composition offered and from the fact that the bankrupt represents that they would accept even a smaller composition than that offered, by saying that they have stated their willingness to accept any composition which should accomplish that result. In view of the fact that the bankrupt has no assets whatever, and has been refused a discharge on the opposition of the creditors who now oppose the proposed composition, such composition loses all the features of a composition, and becomes merely an attempt by friendly creditors to force upon the opposing creditors a discharge, when it has been held, in a formal proceeding, that the bankrupt is not entitled to a discharge. Under like circumstances in England, in a liquidation by arrangement, the confirmation of a resolution is refused. In Re Russell, 10 Ch. App. 255, 263, it appeared that the assets were so trifling that practically there would be no dividend, and the creditors had resolved on a liquidation by arrangement whereby the debtor was at once to receive his discharge without there being any security that the creditors would ever receive anything. There were dissentient

creditors who opposed the confirming of the resolution. The court remarked, that the creditors, being likely to get little under any circumstances, may have been desirous to discharge the debtor, but that it seems impossible to suppose that the majority of the creditors would come to such a resolution as that bona fide, for what they considered best for the creditors; that it appeared manifest that the majority of the creditors had been actuated by kindly motives towards the debtor; and that a resolution of that kind could not stand against the objection of the dissentient creditors. The court adds: "The act of parliament enables a certain majority of creditors to bind the minority, but it must be a majority who are bona fide voting for what they consider to be for the benefit of the creditors and with a view of making the best arrangement for the creditors; and if it is made plain that the resolutions come to are not made bona fide for the benefit of the creditors, but with the intent to discharge the debtor without any real benefit to the creditors, then, in my opinion, the minority of the creditors are entitled to object to the registration of such resolutions."

I do not pass on the question of jurisdiction raised, as the foregoing considerations suffice to show that the composition ought not to be confirmed.

HANNEGAN (BURROWS v.). See Cases Nos. 2,205 and 2,206.

HANNIBAL (FAUNTLEROY v.). See Cases Nos. 4,691 and 4,692.

HANNIBAL (NORTHWESTERN UNION PACKET CO. v.). See Case No. 10,343.

HANNIBAL, The (UNITED STATES v.). See Case No. 15,298.

HANNIBAL & ST. J. R. CO. (AETNA INS. CO. v.). See Case No. 96.

HANNIBAL & ST. J. R. CO. (BAILEY v.). See Case No. 736.